GOODRICH
v.
PENDLETON.

R. GOODRICH, Administrator, *cum test. annexo*, of P. MILLER, deceased, *against* N. PENDLETON.

*June 30.*

A *plea* must rest the defence on a *single point*, creating of itself, a bar to the suit.

A plea in bar of the statute of limitations is bad, unless accompanied by an answer supporting it, by a particular denial of all the facts and circumstances charged in the bill, and which in equity may avoid the statute.

As where the bill charged the defendant with fraud, and a breach of trust; and he pleaded the statute of limitations in bar, and for answer in support of it, denied, in general terms, that he received the money mentioned in the bill, as trustee, the plea was held bad and overruled with costs, and the defendant ordered to answer in six weeks, with liberty to insist, in such answer, on the benefit of the statute.

*PHINEAS MILLER*, of *Georgia*, made his will, the 11th of *December*, 1797, appointing *Decius Wadsworth, Samuel Kellock*, and his wife, *Catharine Miller*, his executors, and died the 7th of *December*, 1803. The two executors first named declined to act, and the executrix administered, but did not take out any letters testamentary in this state. At the time of his death, the testator was a creditor of the *United States* to *forty* thousand dollars, and upwards, on a contract made for supplying the *United States*, with ship timber. Some controversy having arisen between the executrix and the *United States*, relative to this debt, the defendant professing great friendship for the executrix, who resided in *Georgia*, wrote her a letter, dated *December* 4, 1806, in which he takes notice of that debt, and expressed a belief, that if he were duly authorized, he could obtain the money from the *United States*, and he at the same time, inclosed a power of attorney for her to execute. The executrix received the letter, executed the power of attorney, and returned it to the defendant. The power of attorney was dated *January* 30th, 1807, by which the executrix authorized the de-

fendant to demand and receive of and from the *United States*, the debt above mentioned, being the balance of account as awarded by arbitrators, to give acquittances for the same, and to compound, if necessary, any controversy respecting it, so far as she, as executrix, might lawfully do. The executrix, afterwards, by a letter written by her agent, *Ray Sands*, from *Georgia*, to the defendant, requested him not to act under the power, which letter the defendant received prior to the 26th of *March*, 1807. The defendant, afterwards, in pursuance or under colour of the power of attorney, on the 13th of *January*, 1808, received from the *United States* 18,328 dollars, 50 cents, for the balance due to the estate of the testator, and as attorney of the executrix, gave a discharge to the *United States*. The defendant paid over to the executrix 7,960 dollars, 11 cents, but retained the residue of the money so received by him, being 10,368 dollars, 39 cents, against her consent. The bill further stated that the sum so received by the defendant, was less than the sum due from the *United States* to the estate of the testator, and less than could have been obtained before giving the power to the defendant; that the sum actually received was by way of compromise, and which compromise the defendant was induced to make, not because he considered that sum as the full amount due, but with a view to obtain possession of it, and apply it to his own use. That the executrix, residing in *Georgia*, and the defendant in *New-York*, was unable to obtain the sum so withheld from her, by the defendant; though the sum so received by him was *as a trustee* for the estate of the testator, and he was liable to account for the same as such trustee. That the executrix died in *Georgia* on the 3d of *September*, 1814. That on the 9th of *October*, 1817, the plaintiff took out letters of administration, with the will annexed, in *New-York*. That the defendant refuses to account with the plaintiff, for the money so received, or to pay it; pretending that when he received

the power of attorney as aforesaid, there was a debt due to him from the estate of the testator, and that it was agreed between him and the executrix, when he received the power, that he might retain the amount of his debt out of the moneys to be received by him. The plaintiff denied any such agreement; or if it was ever made by the executrix, it was through ignorance of her duties, and from an undue confidence reposed in the defendant, who professed his desire, in soliciting the power, to promote her intest. That if any debt was due to the defendant, it was a simple contract debt unsettled, and that the estate of the testator was then indebted, by judgments and specialties, to more than the amount of all the assets, which the defendant knew; and the agreement, if made, would have been a *devastavit* in the executrix, &c. The bill prayed that the defendant might be decreed to account with the plaintiff, as administrator, with the will annexed, for the moneys so received by him from the *United States,* and to pay the same, &c.

The defendant, on the 13th *January* last, put in a *plea* and *answer.* For *plea,* he said, that every cause of action in the bill contained, accrued above six years before filing the bill. That after the cause of action, (if any,) arose, to wit, in *June,* 1808, the said *C. M.,* the executrix, was in this state, and that she, by her will, appointed her daughter, *Louisa Shaw,* executrix, who proved the will in *Georgia.* That the sum of money, (if any,) received by the defendant, was not received *as trustee* for the estate of *P. M.,* the deceased testator, or for *C. M.* as executrix, and, therefore, the defendant pleads the statute of limitations, in bar of the plaintiff's bill. Tha tin support of the plea, and as to so much of the bill as charges that the money received by the defendant was received as trustee, for the estate of *P. M.,* deceased, and that the defendant was, and is accountable as trustee, he *answers,* and says, that he denies that the said money was received by him as

trustee, but that the same was received by him on his own account, and retained by him, at the time of the receipt, for his own use, (being applied by him for the payment of a debt justly due to him from *P. M.*, in virtue of a special agreement between the executrix and him,) and not as trustee.

1818.

GOODRICH
v.
PENDLETON.

The cause came on to be heard on the plea in bar and the answer in support of it.

*Hoffman* and *T. A. Emmet,* for the defendant. To show that the statute of limitations, having commenced to run, continued, so as to bar the plaintiff, they cited 2 *Atk.* 610. 9 *Vesey,* 71. 76. 10 *Vesey,* 93. 3 *P. Wms.* 309. As to the form of the plea, and that a general denial that the defendant did not receive the money as *trustee,* was sufficient in its support, they cited *Mitf. Pl.* 212. 217. 2 *Atk.* 393. 395. 3 *Atk.* 70. 1 *Anst.* 59. 97. 6 *Vesey,* 584. 586. 14 *Vesey,* 65. *Coop. Eq. Pl.* 226.

*Riggs* and *Boyd,* for the plaintiff, contended, that the plea was bad, as being *double* and multifarious, and did not go to the whole bill. They cited 1 *Bro. C. C.* 404. 3 *Anst.* 738. 1 *Anst.* 14. 59. 2 *Vesey,* 107, 108. 6 *Vesey,* 17. *Gilb. Ch.* 58. *Coop. Eq. Pl.* 223. 228. 1 *Atk.* 64. *Wyatt's Pr. Reg.* 324. *Mitf.* 177. 3 *P. Wms.* 143.

THE CHANCELLOR. This plea, with its attendant answer, is insufficient.

1. In the first place, it is multifarious, and contains distinct points. It states that the cause of action did not arise within six years, and that the plaintiff was barred by the statute of limitations; it also states, that the sole acting executrix of *Phineas Miller,* deceased, made her will, and appointed her daughter, *Louisa Shaw,* executor, and that the daughter had proved the will. This last point seems to be wholly unconnected with any fact forming the plea

of the statute; if it meant any thing, it meant that the plaintiff was not entitled to the character he assumed, and that the suit ought to have been brought in the name of *Louisa Shaw*. No doubt, it may, in certain cases, be a good plea, that a plaintiff, who assumes to be administrator, was not entitled to that trust, and of this we have an example in *Ord* v. *Huddleston*, cited in *Mitford's Pl.* p. 189. But I do not mean to say, that the fact thus stated would, if it had stood by itself, have been a good plea. It is sufficient, however, for the present, to observe, that it is put forward in the plea, as a matter of defence, or it would not have appeared there, and the rule applies, that a plea containing two distinct points is bad. Such a defective plea was overruled by Lord *Thurlow*, in *Whitbread* v. *Brockhurst*; (1 *Bro.* 404.) and Lord *Rosslyn* afterwards observed, (6 *Vesey*, 17.) that he would not allow a plea of the statute of frauds, when it was coupled with another defence. Every plea must rest the defence upon a *single point*, and upon that point create a bar to the suit. Such is the policy and convenience of pleading, and the party must resort to his answer, if he wishes to avail himself of distinct matters. It is fit and salutary that a plea, which mixes together different and discordant matter, should be condemned, for it uselessly incumbers the record, and serves no other purpose than to produce confusion.

2. But I perceive a more important and stronger objection to the plea.

The defendant is charged as a trustee, and with a breach of his trust, and with fraud in the execution of it. These charges formed an equitable bar to the plea of the statute, and they ought to have been fully, particularly, and precisely, denied in the answer, put in as an auxiliary to the plea.

The bill contains the following charges, viz. that the estator, *Phineas Miller*, had a large demand against the

*United States ;* that the defendant, professing a friend-ship for *Catharine Miller,* the widow and sole acting exe-cutrix, and who resided in the state of *Georgia,* wrote her a letter, in which he takes notice of her demand, and ex-presses a belief that, if duly authorized, he could obtain the money for her, and at the same time, inclosed to her a power of attorney to be executed and given to him; that under that solicitation she executed and sent him the power; that she afterwards wrote him a letter by her agent, request-ing him not to act under that power, and which letter he received in *March,* 1807; that the defendant, acting under colour of the power, in *January,* 1808, received from the *United States,* 18,328 dollars and 50 cents, as for the ba-lance due to the testator, which he received as such attorney and trustee, and in that character gave a dis-charge to the *United States ;* that he, contrary to her consent and his duty, appropriated of that sum, 10,368 dollars and 39 cents, to his own use; that he received the money upon a composition, made by him with the *United States,* and which he was induced to make, not because he considered the sum received to be the full amount due, but with a view to obtain possession of it, and to apply it to his own use, in discharge of some pretended unsettled debt by simple contract, alleged to be due to him from the testator; that the estate of the testator was in-debted, by judgment and specialities, to more than all the assets, and which fact was well known to the defendant, and if the executrix had assented to any such appropria-tion, she would have committed a *devastavit,* which the defendant, from his professional knowledge, also knew.

Upon such a case, as stated by the bill, and not denied by the answer, I might well say, with Lord *Hardwicke,* in *Brereton* v. *Gamul,* (2 *Atk.* 240.) when he overruled a plea of the statute, as not being particular enough, that " the case was of such a nature as entitled the plaintiff to all the favour the court could show her."

1818.

GOODRICH
v.
PENDLETON.

I need not stay to show that the defendant, being charged with a fraudulent breach of trust, as an agent or trustee for the executrix, cannot set up the statute of limitations, so long as the trust is admitted. A trustee cannot protect himself by the statute of limitations in a suit brought by the *cestuy que trust*; it would be a waste of time to look for authorities in support of a principle so well known and established. (*a*) The only question that can now be made is, whether the defendant has sufficiently met and denied the charges in respect to the creation and breach of this trust. He contents himself with denying in the plea, that the money received by him, was received as trustee for the estate of *Phineas Meller*, deceased, and with denying in the answer, that the money was received by him as trustee, and with averring that it was received on his own account, and retained for his own use, under some agreement not detailed. We have no denial of the letter professing friendship, and soliciting the appointment, nor any denial of the receipt of the letter from the executrix, suspending the power, nor of the subsequent receipt of the money from the *United States*, under a composition made in the injurious manner and for the unjust purposes stated, nor have we any denial that he gave the *United States* an acquittance or discharge, as attorney for the executrix. The defendant cannot be permitted to shelter himself under the statute, from the responsibility of such grave accusations, by a mere simple denial of the receipt of the money as trustee, while he leaves all those facts or charges uncontradicted which establish the existence of the trust, and show that he certainly *did receive* the money, as such agent or trustee. If such a general denial, without meeting specific charges, was sufficient, every trustee might escape from responsibility, by means of the statute, and be left to his own construction of what was intended by such a denial. But the rules of pleading are founded in better

(*a*) Vide *Decouche* v. *Savetier*, ante, p. 190—216.

sense, and in stricter and closer logic; they require the defendant to answer, particularly and precisely, the charges in the bill, which go to destroy the bar created by the statute.

The rule is, that the equitable circumstances charged in the bill, and which will avoid the statute, must be denied by the answer, as well as by the general averment in the plea; and the answer in support of the plea, (and which is indispensable to its support,) must be full and clear, and contain a particular and precise denial of the charges, or it will not be effectual to support the plea. The court will intend that the matters so charged against the pleader, are true, unless they be fully and clearly denied. The facts requisite to render the plea a defence, must be clearly and distinctly averred, so that the plaintiff may take issue upon them; and the answer in support of the plea must contain particular and precise averments, to enable the plaintiff to meet them, as the object of the answer is to give the plaintiff an opportunity of taking exceptions to the traverse of the facts and circumstances charged in the bill, which, if true, would destroy the bar set up. These general principles of pleading are laid down in Lord *Redesdale's Treatise of Pleading*, (p. 212. 214. 236. 237.) a work of great authority on the subject; they are also to be met with in other treatises of established character. (*Cooper's Eq. Pl.* 227, 228. *Gilbert's For. Rem.* 58. *Van Heythuysen's Equity Draftman*, p. 443.) They are, indeed, plain, elementary rules, which I should have apprehended could not well be mistaken by the equity pleader; but we will, for a moment, look into the cases in which they have been declared and applied.

In *Price* v. *Price*, (1 *Vern.* 185.) the pefendant pleaded that he was a *bona fide* purchaser for a valuable consideration, but there being several badges of fraud stated in the bill, though the defendant in his plea had denied them, yet, *because he had not denied them, by way of answer, so that the plaintiff might be at liberty to except*, the plea

was overruled. In *The South Sea Company* v. *Wymond-sell*, (3 *P. Wms.* 143.) the bill charged fraud, and the defendant pleaded the statute of limitations, and denied the matters of fraud, *but as there were some circumstances not fully denied*, the defendant was ordered to answer the bill, with liberty to the plaintiff to except, and the benefit of the statute was to be saved to the defendant. In *Walter* v. *Glanville*, (3 *Bro. P. C.* 266.) sometimes referred to, to show, that if the matters charged are answered substantially, it will do, the only question was, whether the answer in support of the plea, did not fully and particularly, (as it did in that case,) answer the material charges in the bill. The necessity of such an answer was evidently admitted by the counsel, and by the court, and so it must have been understood by Lord Ch. *King*, who made the decree appealed from, and who, subsequently, in the case cited from *P. Williams*, required such a full and particular answer.

Lord *Hardwicke* frequently noticed and supported these rules of pleading. Thus, in *Brereton* v. *Gamul*, already cited, the plea of a fine levied and of five years with nonclaim, was overruled, *as not being particular enough*. So, in 3 *Atk.* 70. *Anon.* the bill charged, that since the death of the intestate, the administratrix had promised to pay the note as soon as she had effects, and the administratrix pleaded the statute of limitations, and that she made no promise. But the Chancellor held the plea to be *too general*, as there was a special promise charged; and he ordered the plea to stand for an answer, with liberty to except. Again; in *Hildyard* v. *Cressy*, (3 *Atk.* 303.) the defendant pleaded a fine and non-claim to a bill for a discovery whether the defendant were a *bona fide* purchaser, for a valuable consideration, and it appearing that the defendant had not made *a complete answer*, and therefore not properly supported his plea, the plea was ordered to stand for an answer, with liberty to except. In *Radford* v. *Wilson*,

(3 *Atk.* 815.) the defendant put in a plea of a purchase
for a valuable consideration, without notice; but as the
instances of notice charged in the bill were particular and
special, it was held that a general denial of notice was not
sufficient, and that it must be denied as *specially and par-*
*ticularly as it was charged,* and the plea was overruled.

The modern cases before Lord *Eldon,* contain the same
rules.

Thus, in *Jones* v. *Pengree.* (6 *Vesey,* 580.) there was a
plea of the statute of limitations, and an answer. The
former was objected to as multifarious, and as not covering
enough; and the answer was objected to as overruling the
plea by answering to the very parts to which the plea
went, and as not answering the material charge which, if
admitted, would have taken the case out of the statute.
It was observed, upon the argument, that the *plea* ought
to go to every thing, except the charges introduced into
the bill to take the case out of the statute, and which it
was necessary to *answer.* The plea was overruled as
covering too much, and ordered to stand for an answer,
with liberty to except; and though that case (as well as
the one which followed) does not strike me as dis-
tinguished either for precision or clear distinctions,
yet it is important in this respect, that Lord *Eldon*
adopts and approves of the rule, in the very words of *Mit-*
*ford,* "that if any matter is charged by the bill, which
may avoid the bar created by the statute, that matter
must be denied *generally,* by way of averment in the
plea; and it must be denied *particularly* and expressly, by
way of answer to support the plea." The reason of the
rule his lordship stated to be, that the plaintiff was enti-
tled, by exceptions, to compel the defendant to answer pre-
cisely to all the cases put in the bill as exceptions to the
statute. In the next case of *Bayley* v. *Adams,* (6 *Vesey,*
586.) there was a plea of the statute of limitations, sup-

1818.

GOODRICH
v.
PENDLETON.

ported by an answer, and the decision was, that the plea was not sufficiently supported by the answer, because the charges in the bill were not sufficiently answered. There was a good deal of discussion in that case on the point, whether the averments meeting the charges in the bill ought to be repeated in both plea and answer; and two decisions in the Exchequer, (*Pope* v. *Bush.* and *Edmundson* v. *Hartley*, 1 *Anst.* 59. 97.) which held, that if both plea and answer met and denied the same charges by the averments, the answer would overrule the plea, were much questioned. I need not now enter into that discussion; and even the Exchequer cases were declared to be confined to awards. It seemed to be admitted throughout the case, that the *answer*, at least, must contain a full and particular denial of the charges; and perhaps the better opinion is, that a general denial will be sufficient in the plea.

The result is, that a plea of the statute is bad, unless accompanied with an answer aiding and supporting it, by a particular denial of all the facts and circumstances charged in the bill, and which form an equitable bar to the plea of the statute. The plea in this case has no such accompanying answer, and it must be overruled. The usual order in such cases is, that the plea stand for an answer, with liberty to the plaintiff to except; but in some of the cases the plea was declared to be overruled, and the defendant ordered to answer, saving to himself the liberty to insist on the statute in the answer. That is the better course in this case; for to order the plea to stand for an answer, with liberty to the plaintiff to except, would be prolonging the litigation, as we may take it for granted, from the palpable insufficiency of the plea as an answer, that the plaintiff would except, and the defendant be finally compelled to a fuller answer.

I shall, therefore, overrule the plea, with costs, and order

the defendant to answer in six weeks, when he will still have the liberty of insisting on the benefit of the statute in his answer.