# FARLEY v. KITTSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Argued March 29, 30, 1886.—Reargued December 8, 9, 1886.—Decided February 7, 1887.

At the hearing upon a plea in equity and a general replication, no fact is in issue but the truth of the matter pleaded.

Objections to the equity of the plaintiff's claim, as stated in his bill, cannot be taken by plea.

A plea in equity, though under oath, and negativing a material averment in the bill, is no evidence in the defendant's favor.

A bill in equity to enforce a contract between the plaintiff and the defendants to purchase for their joint benefit the bonds, secured by mortgages, of two railroads, of one of which the plaintiff was receiver, and of the other general manager under the trustees in the mortgage, alleged that he performed the agreement on his part; that the defendants purchased the bonds through an agent of the bondholders, and afterwards purchased the railroads under decrees of foreclosure, and entered into possession and made large profits, and refused to account to the plaintiff for his share; and that the plaintiff, pleading the negotiations for the purchase of the bonds, informed the agent of the bondholders of his interest, and at all times answered to the best of his knowledge and ability all inquiries of the bondholders or their agent, or of the trustees or any person interested in the property, and always acted honestly and in good faith towards all such persons. The defendants filed a plea, averring that neither the agent nor the bondholders had any notice of the plaintiff's interest until after the sale of the railroads under the decrees of fore-

closure, and that the agreement sued on was a breach of his trusts as receiver and as manager, and did not entitle him to relief in equity. A general replication was filed, and at the hearing the truth of the fact averred in the plea was disproved. *Held*, that the plea must be overruled, and the defendants ordered to answer the bill.

THIS was a bill in equity by Jesse P. Farley against Norman W. Kittson, James J. Hill, and the St. Paul, Minneapolis and Manitoba Railway Company, which, as amended by leave of court, contained the following allegations :

That in 1876 the plaintiff and Kittson and Hill agreed together to acquire by purchase or contract, for their joint and equal benefit, all that could be obtained of the bonds of the St. Paul and Pacific Railroad Company and the First Division of the St. Paul and Pacific Railroad Company, two corporations existing under the laws of Minnesota, and owning railroads in that state, those bonds being then outstanding and for sale at a large discount, and secured by mortgages upon the railroads, then in process of foreclosure; that the object of the agreement was to buy the railroads at the foreclosure sales, using the bonds in payment, and thereby to acquire the railroads; that it was also agreed that, in order to obtain from one Donald A. Smith and other capitalists the funds required for the enterprise, Kittson and Hill might use or give them an interest therein, but that all the interest not so used or given should be retained and held for the joint and equal benefit of the plaintiff and Kittson and Hill.

That it was further agreed between the plaintiff and Kittson and Hill that the details of the negotiations for procuring the necessary funds and for the purchase of the bonds should be principally conducted and managed by Kittson and Hill, and the persons so given an interest in the enterprise, and that the plaintiff "should furnish such facts, information and advice, and render such aid and assistance therein, from time to time, as should be required of him."

That the plaintiff "had knowledge, not possessed by any of the other parties, as to the whereabouts and situation of said bonds, the rated value thereof by holders, the mode whereby and the channel through which the same could be

reached and procured, also in respect to the situation, amount, character and value of the lines of railroad and property mortgaged to secure said bonds, and in respect to the pending suits for the foreclosure of said mortgages, and that the services of the plaintiff in respect to all of said matters, and his coöperation, were indispensable to the success of said enterprise."

That thereupon Kittson procured funds from Smith and one George Stevens, and agreed to give them a share in the enterprise, the amount of which was unknown to the plaintiff, but was believed by him to be one half; and that the rest belonged to the plaintiff Kittson and Hill in equal shares.

That pursuant to the agreement between the plaintiff and Kittson and Hill negotiations were opened in 1877 and carried on until 1879, resulting in the purchase of bonds amounting in the aggregate, at their face value and interest, to more than $25,000,000; and that the purchases of bonds were made by and in the name of Smith, Stevens, Kittson and Hill, but for the purpose of being used in the purchase of the railroads when offered for sale under foreclosure decrees, and under and in pursuance of the agreement between the plaintiff and Kittson and Hill.

That "throughout said negotiations for the purchase of said bonds, and in the purchases thereof, the plaintiff was continuously called upon by the said Kittson and Hill for facts and information, advice and coöperation in respect thereto, and at their request furnished and rendered the same, pursuant to the aforesaid agreements and understandings between them; and that said negotiations were only successful through and by means of the advice and coöperation of the plaintiff, and the facts and information peculiarly within his knowledge as aforesaid, and imparted by him to the said Kittson and Hill, at their request, under said understandings and agreements."

That most of the purchases of bonds were made under an agreement with the holders that they should not be paid for till the railroads were sold under decrees of foreclosure, and that the sellers of the bonds should then have the option of

being paid in cash, or of taking new bonds issued by a company to be organized by the purchasers, and secured by mortgage upon the same property.

. That nearly all the bonds were owned in Holland, and that one John S. Kennedy was agent of a large majority of the bondholders, with full authority to take such action in respect to them as he thought best, and was a trustee in all the mortgages, except one for $15,000,000 on the First Division of the St. Paul and Pacific Railroad, and was the agent of the holders of more than $11,000,000 of the bonds secured by that mortgage; and that all the foreclosure suits had been commenced by his order, and were prosecuted under his general control and direction.

That the plaintiff "was appointed receiver of the property of the St. Paul and Pacific Railroad Company, and was made general manager of the lines of road of the First Division of the St. Paul and Pacific Railroad Company, under the trustees in said mortgages in possession thereof, upon the recommendation and at the instance and request of said Kennedy."

That after the agreement between the plaintiff and Kittson and Hill, and before the decrees of foreclosure, and before the purchase of any of the bonds, and while negotiations were pending for the purchase of the bonds represented by Kennedy, "the plaintiff informed the said Kennedy of his said interest and connection with the said Kittson and Hill in the project for the purchase of said bonds; and that the said Kennedy had full notice and knowledge that he was so connected therewith and interested therein, and fully approved and sanctioned the same;" that the negotiations for the purchase of the bonds were mainly had with Kennedy as agent of the bondholders, and the bonds purchased were placed in the hands of Kennedy and his partner, one Barnes, to be held until paid for as agreed, and were so held, and only delivered upon being so paid for; and that Kennedy strongly recommended the bondholders to sell their bonds upon the terms offered by Smith, Stevens, Kittson and Hill, as the best disposition of them that could be made.

That "to all inquiries made by said Kennedy, or any of the

trustees in said mortgages, or by any of the holders of any of the bonds secured thereby, or by any one interested in the property under his charge as manager or receiver, he [the plaintiff] at all times gave full and true answers and information to the best and utmost of his knowledge and ability, and kept the said Kennedy fully informed of all facts, matters and things coming to his knowledge affecting said property, and in all things acted honestly and in good faith towards all persons interested in the property under his control as receiver and manager as aforesaid."

That the defendant railway company was a corporation organized under the laws of Minnesota in May, 1879, by Kittson, Hill, Smith and Stevens, for the purpose of taking, holding and managing the mortgaged railroads, for the use and benefit of the parties interested in the purchase of the bonds; and that those four persons were directors and officers of this company and had control of it.

That in March and April, 1879, foreclosure decrees were entered in the pending suits, directing the sale by auction of the mortgaged railroads, and allowing outstanding bonds to be taken in payment for an amount equal to what they would be entitled to by way of dividends under those decrees; that in May and June, 1879, the railroads were sold accordingly, and, by direction and procurement of Kittson, Hill, Smith and Stevens, purchased by the defendant railway company, for the use and benefit of the parties interested in the purchase of the bonds as aforesaid, including the plaintiff, and all the bonds purchased were then used in payment; that the defendant company paid nothing for the railroads, but took them without consideration, except the consideration furnished and provided by the plaintiff and Kittson, Hill, Smith and Stevens, which consideration, aside from the bonds, was furnished by Smith and Stevens as aforesaid; that property worth in all over $15,000,000 was thereby vested in the company, for the use and benefit of the plaintiff and Kittson, Hill, Smith and Stevens, in proportion to their respective interests, and the company had notice at the time of the purchase that the plaintiff was jointly interested with Kittson and Hill.

That the defendant company in June, 1879, issued and negotiated new bonds to the amount of $8,000,000, secured by mortgage of the railroads, and with these bonds paid for all the bonds purchased as aforesaid, and all other expenses of the enterprise; and had since, under the control and management of Kittson, Hill, Smith and Stevens, held and operated the railroads and made large net profits.

That the capital stock of this company was $15,000,000, which represented the property acquired, and was part of the profits resulting from the enterprise; that other profits amounting to many hundred thousand dollars had also been divided between Kittson, Hill, Smith and Stevens; and that a large amount of stock had been distributed among them, of which Kittson and Hill received 57,646 shares, being part of that to which the plaintiff, Kittson and Hill were entitled under the arrangement with Smith and Stevens, but that the company neglected and refused to deliver any of the stock to the plaintiff.

That Kittson and Hill never questioned, but always admitted, the plaintiff's right to share equally with them, until after the organization of the defendant company in May, 1879, and then at first only suggested to him that his share ought not to be equal to theirs, because they had, as they claimed, been required to advance some money in carrying out the enterprise; but now the defendants, confederating to defraud the plaintiff, refused to account with him, or to deliver to him any stock, or to pay him any of the profits of the enterprise, and ignored and disregarded all his rights in the premises.

The bill prayed for a discovery, for an account, and that the plaintiff be adjudged to be entitled to an equal share with Kittson and Hill in the enterprise and its profits, and they be ordered to pay and turn over to him one third of the moneys, bonds and stocks received by them, and the railway company be ordered to issue to him his proportion of stock, and to recognize his rights in its stock and property as equal to those of Kittson and Hill, and for further relief.

To this bill the St. Paul, Minneapolis and Manitoba Railway Company demurred for want of equity, and Kittson and Hill filed a plea.

The plea, after setting out with particularity the various issues of bonds, secured by mortgages, by the St. Paul and Pacific Railroad Company, and by the First Division of the St. Paul and Pacific Railroad Company, and the appointment of successive trustees under those mortgages; and alleging that, upon a bill filed in 1873 by Kennedy and others, on behalf of all the bondholders under a mortgage of $15,000,000 on the first of those railroads, Farley was appointed by the court, on August 1, 1873, receiver of that railroad, and accepted the trust, and took possession of and managed the road from that date until it was sold and delivered to the defendant railway company under a decree of foreclosure, as stated in the bill; that on October 9, 1876, Kennedy and two others, as trustees, under and pursuant to mortgages on the second of those railroads, took possession of it; and that from that date until it was delivered to the purchaser under a decree of foreclosure, those trustees held and operated it, and Farley was the general manager of it for them, and had full control of the management thereof; continued and concluded as follows:

"That the said plaintiff never at any time informed the said Kennedy, nor any of the holders of any of said mortgage bonds, of his interest in the project for purchasing said bonds, or of his interest in the project of acquiring by means of said bonds the said mortgaged property, which he alleges in his bill of complaint; nor did the said Kennedy, nor any of said bondholders, know, suspect, or have any information or belief, at any time until after the confirmation of all said foreclosure sales, that the plaintiff ever claimed to have any such interest, or any interest in said projects, or either of them.

"And these defendants say, that as receiver of said lines covered by said $15,000,000 mortgage the said plaintiff could not lawfully make the agreement with these defendants mentioned in the bill of complaint, or engage in the enterprise, therein mentioned, of purchasing the bonds of said $15,000,000 issue, or in the enterprise of purchasing the said mortgaged property; and that the making of such an agreement and the embarking in such an enterprise by him was a breach of trust on his part as such receiver, and a fraud on the holders of the

bonds of said $15,000,000 issue, and was a fraud upon this court, whose receiver he was.

" And that as general manager for the trustees in said mortgages of the lines of railroad of said First Division Company the said plaintiff occupied a position of trust and confidence toward his employers, the said trustees, and towards the holders of the bonds secured by said mortgages; and that by making the agreement and engaging and continuing in the enterprise of purchasing the said bonds and said mortgaged property mentioned in his said bill, the said Farley was guilty of a breach of trust towards and a fraud upon the said trustees and the said bondholders.

" And these defendants say that by reason of the said fiduciary positions occupied by the plaintiff, as aforesaid, he is not entitled to the aid of a court of equity to enforce as against these defendants any of the agreements mentioned in said bill, or any rights claimed by him and growing out of said agreements.

" Therefore these defendants do plead all and singular the matters aforesaid in bar to the plaintiff's said bill, and pray the judgment of this honorable court whether they should be compelled to make any further answer to the said bill, and pray to be hence dismissed, with their reasonable costs and charges in this behalf most wrongfully sustained."

Annexed to the plea were a certificate of counsel, that it was in their opinion well founded in point of law; and an affidavit of the defendant Hill, that the plea was true in point of fact, and was not interposed for delay, and that the defendant Kittson was absent from the State and District of Minnesota.

The plaintiff filed a general replication to the plea, and on his motion the demurrer of the railway company and the plea of Kittson and Hill were set down for hearing. The demurrer of the company was overruled, and on its application it was ordered that the plea of Kittson and Hill should stand as the joint and several plea of all the defendants.

The case was then heard upon the bill, plea, replication, and proofs. The only evidence introduced was a stipulation in writing of counsel that the averments of the plea, preceding those

above quoted in full, were true; the bill on which the plaintiff was appointed receiver; an order passed by the court on that bill on May 31, 1878, reciting that Stevens, Smith, Kittson and Hill, under an agreement between them and the bondholders, dated March 13, 1878, were the equitable owners of $11,400,-000 of the $15,000,000 issue of bonds, and authorizing Farley as receiver to finish the roads with money to be supplied by them; and the deposition of the plaintiff, the substance of which was, that before the completion of the purchase of the bonds he informed Kennedy by a letter (which could not be found) that Kittson and Hill had offered him an interest in it, in answer to which Kennedy, on February 25, 1878, wrote him a letter (which he produced), acknowledging the receipt of his letter, and saying, "We think it will pay you to take an interest with Kittson and Hill, and we are glad to hear that they have offered it to you;" but that the plaintiff did not disclose to Kennedy that he had already the same interest that Kittson and Hill had, because he had agreed with them that he would not make the fact public, for fear that the stockholders might hear of it and apply to the court to have him removed and another receiver appointed, to the detriment of the enterprise, and of the interests of the bondholders; and that he did not inform the court of his interest when the order of May 31, 1878, was made.

The Circuit Court, assuming it to be proved that the plaintiff informed Kennedy of his interest, yet held that the agreement of the plaintiff with Kittson and Hill was unlawful and void, and on that ground sustained the plea and dismissed the bill. 4 McCrary, 138. The plaintiff appealed to this court.

*Mr. George F. Edmunds* and *Mr. Henry D. Beam* for appellant. *Mr. Edward D. Cooke* was with them on the brief.

*Mr. William M. Evarts* and *Mr. George B. Young* for appellees. *Mr. H. R. Bigelow* was with them on the brief.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

A brief abstract of the pleadings will help to make clear what is presented for decision upon this record.

The suit was brought by Farley to enforce an agreement by which he and the defendants Kittson and Hill agreed to purchase, for their joint and equal benefit, the bonds, secured by mortgages, of two railroads, of one of which he was receiver, by appointment of the court, and of the other of which he was the general manager, by appointment of the trustees named in the mortgages.

The bill alleged the making of the agreement; that its object was, by means of the bonds so purchased, to purchase the railroads at sales under decrees of foreclosure in suits then pending; that it was agreed that Kittson and Hill should conduct the negotiations for procuring the necessary funds and purchasing the bonds, and the plaintiff should furnish such facts, information and advice, and render such assistance, from time to time, as should be required of him; that the plaintiff had knowledge, not possessed by the other parties, as to who held the bonds and at what rate, and how they could be procured, and as to the nature and value of the railroads, and as to the pending suits for foreclosure, and his services and coöperation were indispensable to the success of the enterprise; that he performed the agreement on his part; that Kittson and Hill obtained the requisite funds from other persons, and purchased the bonds from the bondholders through one Kennedy, the authorized agent of the latter, and afterwards purchased the railroads at sales under decrees of foreclosure; that pending the negotiations for the purchase of the bonds, the plaintiff informed Kennedy of his interest, and his connection with Kittson and Hill, in the project to purchase them; that the plaintiff at all times, to the best of his knowledge and ability, gave full and true answers and information to all inquiries made by Kennedy, or by any of the trustees or bondholders, or by any person interested in the property under his charge as receiver and as manager, and kept Kennedy fully informed of all matters coming to his knowledge affecting the property, and in all things acted honestly and in good faith towards all persons interested in it; that Kittson and Hill had

organized a new corporation, which was joined as a defendant; and that the defendants had thereby obtained a great amount of property and of profits, and had refused to account to the plaintiff for his share. The bill prayed for a discovery, an account, and other relief.

The individual defendants filed a plea, which, on the motion of the defendant corporation, was ordered to stand as its plea also, consisting of three parts:

First. A restatement in detail of some of the facts alleged generally in the bill.

Second. Averments that the plaintiff never informed Kennedy or any of the bondholders of his interest in the project for purchasing the bonds and thereby acquiring the mortgaged property, as alleged in the bill; and that neither Kennedy nor the bondholders knew, suspected, or had any information or belief, that the plaintiff had or claimed to have any interest in the project, until after the foreclosure sales.

Third. Averments that the making by the plaintiff of the agreement sued on, and his engaging in the enterprise of purchasing the bonds and thereby acquiring the railroads, were, as to that railroad of which he was receiver, unlawful, a breach of his trust as such receiver, and a fraud upon the bondholders and the court; and, as to the railroad of which he was general manager for the trustees under the mortgages, a breach of trust towards the trustees and the bondholders, and a fraud upon them; and that by reason of the fiduciary positions so occupied by him the plaintiff was not entitled to the aid of a court of equity to enforce the agreement or any rights growing out of it.

To this plea the plaintiff filed a general replication, and the hearing in the Circuit Court was upon the issue thus joined.

The pleader and the court below appear to have proceeded upon the theory that by a plea in equity a defendant may aver certain facts in addition to or contradiction of those alleged in the bill; and also not only, if he proves his averments, avail himself of objections in matter of law to the case stated in the bill, as modified by the facts proved; but even, if he fails to prove those facts, take any objection to the case

stated in the bill, which would have been open to him if he had demurred generally for want of equity.

But the proper office of a plea is not, like an answer, to meet all the allegations of the bill; nor like a demurrer, admitting those allegations, to deny the equity of the bill; but it is to present some distinct fact, which of itself creates a bar to the suit, or to the part to which the plea applies, and thus to avoid the necessity of making the discovery asked for, and the expense of going into the evidence at large. Mitford Pl. (4th ed.) 14, 219, 295; Story Eq. Pl. §§ 649, 652.

The plaintiff may either set down the plea for argument, or file a replication to it. If he sets down the plea for argument, he thereby admits the truth of all the facts stated in the plea, and merely denies their sufficiency in point of law to prevent his recovery. If, on the other hand, he replies to the plea, joining issue upon the facts averred in it, and so puts the defendant to the trouble and expense of proving his plea, he thereby, according to the English chancery practice, admits that if the particular facts stated in the plea are true, they are sufficient in law to bar his recovery; and if they are proved to be true, the bill must be dismissed, without reference to the equity arising from any other facts stated in the bill. Mitford Pl. 302, 303; Story Eq. Pl. § 697. That practice in this particular has been twice recognized by this court. *Hughes* v. *Blake*, 6 Wheat. 453, 472; *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 257. But the case of *Rhode Island* v. *Massachusetts* arose within its original jurisdiction in equity, for outlines of the practice in which the court has always looked to the practice of the Court of Chancery in England. Rule 7 of 1791, 1 Cranch, xvii, and 1 How. xxiv; Rule 3 of 1858 and 1884, 21 How. v, and 108 U. S. 574. And the case of *Hughes* v. *Blake*, which began in the Circuit Court, was decided here in 1821, before this court, under the authority conferred upon it by Congress, had established the Rules of Practice in Equity in the Courts of the United States, one of which provides that "if upon an issue the facts stated in the plea be determined for the defendant, they shall avail him as far as in law and equity they ought to avail him." Rule 19 in Equity of 1822,

7 Wheat. xix; Rule 32 in Equity of 1842, 1 How. li. The effect of this rule of court when the issue of fact joined on a plea is determined in the defendant's favor need not, however, be considered in this case, because it is quite clear that at a hearing upon plea, replication and proofs, no fact is in issue between the parties but the truth of the matter pleaded.

In a case so heard, decided by this court in 1808, Chief Justice Marshall said: "In this case the merits of the claim cannot be examined. The only questions before this court are upon the sufficiency of the plea to bar the action, and the sufficiency of the testimony to support the plea as pleaded." *Stead* v. *Course,* 4 Cranch, 403, 413. In a case before the House of Lords a year afterwards, Lord Redesdale "observed, that a plea was a special answer to a bill, differing in this from an answer in the common form, as it demanded the judgment of the court, in the first instance, whether the special matter urged by it did not debar the plaintiff from his title to that answer which the bill required. If a plea were allowed, nothing remained in issue between the parties, so far as the plea extended, but the truth of the matter pleaded." "Upon a plea allowed, nothing is in issue between the parties but the matter pleaded, and the averments added to support the plea." "Upon argument of a plea, every fact stated in the bill, and not denied by answer in support of the plea, must be taken for true." *Roche* v. *Morgell,* 2 Sch. & Lef. 721, 725–727.

The distinction between a demurrer and a plea dates as far back as the time of Lord Bacon, by the 58th of whose Ordinances for the Administration of Justice in Chancery, "a demurrer is properly upon matter defective contained in the bill itself, and no foreign matter; but a plea is of foreign matter to discharge or stay the suit, as that the cause hath been formerly dismissed, or that the plaintiff is outlawed or excommunicated, or there is another bill depending for the same cause, or the like." Orders in Chancery (Beames's ed.) 26. Lord Redesdale, in his Treatise on Pleadings, says: "A plea must aver facts to which the plaintiff may reply, and not, in the nature of a demurrer, rest on facts in the bill." Mitford Pl. 297. And Mr. Jeremy, in a note to this passage, com-

menting on the ordinance of Lord Bacon, observes, " The prominent distinction between a plea and a demurrer, here noticed, is strictly true, even of that description of plea which is termed negative, for it is the affirmative of the proposition which is stated in the bill;" in other words, a plea, which avers that a certain fact is not as the bill affirms it to be, sets up matter not contained in the bill. That an objection to the equity of the plaintiff's claim, as stated in the bill, must be taken by demurrer and not by plea is so well established, that it has been constantly assumed and therefore seldom stated in judicial opinions; yet there are instances in which it has been explicitly recognized by other courts of chancery, as well as by this court. *Billing* v. *Flight*, 1 Madd. 230; *Steff* v. *Andrews*, 2 Madd. 6; *Varick* v. *Dodge*, 9 Paige, 149; *Phelps* v. *Garrow*, 3 Edw. Ch. 139; *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 258, 262; *National Bank* v. *Insurance Co.*, 104 U. S. 54, 76.

It only remains to apply these elementary principles of equity pleading to the case before us.

The averments in the first part of the plea, restating in detail some of the facts alleged in the bill, were admitted by stipulation of counsel in writing to be true, and no controversy arose upon them.

The substance of the averments in the second part of the plea was that neither Kennedy, nor the bondholders whose agent and representative he was, had any notice or knowledge that the plaintiff had or claimed to have any interest in the project set forth in the bill, until after the sales of the railroads under decrees of foreclosure. The matter of fact thus averred was put in issue by the replication. The testimony of the plaintiff, (in connection with Kennedy's letter to him,) which was uncontradicted, and was the only evidence upon the matter pleaded, shows that Kennedy, before the completion of the sale and purchase of the bonds, knew that the plaintiff was to have an interest in the project, although he may not have known the extent of that interest, or that it had been already acquired. The want of any notice to Kennedy and the bondholders, averred in the plea, was thus disproved.

The plea, indeed, is supported by the affidavit of one of the defendants that it is true in point of fact. But the oath of the party to its truth in point of fact is added only for the same purpose as the certificate of counsel that in their opinion it is well founded in matter of law, in order to comply with the 31st Rule in Equity, the object of which is to prevent a defendant from delaying or evading the discovery sought, without showing that the plea is worthy of the consideration of the court. *Ewing* v. *Bright*, 3 Wall. Jr. 134; *Wall* v. *Stubbs*, 2 Ves. & B. 354. An answer under oath is evidence in favor of the defendant, because made in obedience to the demand of the bill for a discovery, and therefore only so far as it is responsive to the bill. *Seitz* v. *Mitchell*, 94 U. S. 580. But a plea, which avoids the discovery prayed for, is no evidence in the defendant's favor, even when it is under oath and negatives a material averment in the bill. *Heartt* v. *Corning*, 3 Paige, 566.

The allegations of the bill, that the plaintiff at all times, to the best of his knowledge and ability, gave full and true answers to all inquiries made by Kennedy or any of the trustees or bondholders, or any person interested in the property under his charge as receiver and as manager, and in all things acted honestly and in good faith towards all persons interested in it, were not denied by the plea, and therefore, for the purposes of the hearing thereon, were conclusively admitted to be true. So much of the plaintiff's testimony, as tended to show that he intentionally concealed his interest from the stockholders and from the court, was outside of the averments of the plea, and therefore irrelevant to the issue to be tried.

The plaintiff having neither moved to set aside the plea as irregular for want of an answer supporting it, nor set down the case for hearing upon the bill and plea only, but having replied to the plea, and the only issue of fact thus joined having been determined by the evidence in his favor, it is unnecessary to consider whether the averments of fact in the second part of the plea ought to have been supported by an answer, or whether, if proved, they would have made out a defence to the bill.

The averments in the third part of the plea, that, by reason

of the plaintiff's position as receiver and general manager of the railroads, his entering into the agreement sued on, and engaging in the enterprise of purchasing the bonds and thereby acquiring the railroads, were unlawful, and did not entitle him to the aid of a court of equity to enforce the agreement or any rights growing out of it, were averments of pure matter of law, arising upon the plaintiff's case as stated in the bill, and affecting the equity of the bill, and therefore a proper subject of demurrer, and not to be availed of by plea.

The result is, that the principal question considered by the court below and argued at the bar is not presented in a form to be decided upon the record before us; and that, for the reasons above stated, and as suggested in behalf of the plaintiff at the reargument, the plea was erroneously sustained, and must be overruled, and the defendants ordered, in accordance with the 34th Rule in Equity, to answer the bill.

*Decree reversed, and case remanded, with directions to overrule the plea, and to order the defendants to answer the bill.*