### MAINS *v.* HOMER STEEL-FENCE CO.

1. PLEA IN EQUITY—REQUISITES.
    A plea to a bill in equity must reduce the cause to a single point.

2. SAME.
    This is properly done by averring facts not appearing on the face of the bill, or by denying specifically facts stated in the bill; a general denial of particular averments being insufficient.

3. SAME—OBJECTIONS FOR WANT OF EQUITY—DEMURRER.
    Objections to the equity of complainant's claim as stated in the bill should be taken by demurrer, and not by plea.

4. SAME—DUPLICITY.
    A plea to a bill for an accounting and for a receiver, which raises the question of jurisdiction on two distinct grounds, and alleges that the charge of defendant's insolvency is false, and also contains a general denial of all the material averments of the bill, is bad for duplicity.

Appeal from Jackson; Peck, J.   Submitted November 6, 1897.   Decided April 5, 1898.

Bill by John Mains against the Homer Steel-Fence Company, Charles R. Mains, and Horace V. Swartwout

for an accounting and for other equitable relief.    From a decree dismissing the bill on pleas in bar thereto, complainant appeals.    Reversed.

*Frederick Mains*, for complainant.

*Mains & Cavanagh*, for defendants.

MONTGOMERY, J.    This is an appeal from a decree entered in favor of defendants on two several pleas, the one interposed by the individual defendants, Mains and Swartwout, and the other by the defendant corporation.    The question to be determined is the sufficiency of these pleas; but, for the proper understanding of this question, it is necessary to state somewhat at length the charges contained in the bill of complaint.

The bill alleges that on January 11, 1894, complainant, one George A. Aldrich, and the two individual defendants, Mains and Swartwout, formed a copartnership, to be known as the "Homer Steel-Fence Company," and agreed that each member of the firm should contribute $1,050 to the capital stock; that complainant and Aldrich each paid a portion of their contributions to the capital stock, viz., two-thirds thereof, or $700 each, and complainant stood ready to contribute the balance of his share; but that defendants and Aldrich, at the suggestion of defendant Charles R. Mains, "in violation of said agreement, and without the knowledge and consent of complainant, and without first requesting complainant to contribute the balance of his share," borrowed, upon the credit of the copartnership (which credit is alleged to have been largely, if not wholly, due to the financial responsibility of complainant), the sum of $1,500, and that Charles R. Mains gave a writing to Aldrich, purporting to discharge him from his obligation to pay the balance of his share of the capital stock; and charges that neither of the defendants has contributed to the capital stock, except the sum of $700 contributed by Aldrich, as before stated. The bill further alleges that Charles R. Mains is an

attorney at law, a son of the complainant, and has for several years past been the regularly-employed counsel and attorney of complainant; that complainant was induced to enter into the copartnership agreement, relying upon representations of Charles R. Mains that Aldrich and Swartwout (particularly the former) were men of good business ability, and that they, as well as the said Charles R. Mains, were responsible financially, and relying on the promise of Charles R. Mains that the company would be kept free from debt, and that no other or further capital than that provided to be contributed would be necessary in carrying on said business, and that complainant would be incurring no financial risk in entering into said agreement. The bill further alleges that—

"The copartnership business was entered upon immediately, and was continued by Aldrich, as manager, until June 9, 1894, when, owing to a dispute and irreconcilable difference which had arisen between the said defendants and the said Aldrich in relation to the management of the business by the said Aldrich, and because, as your orator charges upon information and belief, of the desired purpose on the part of the said Charles R. Mains to secure the exclusive control and management of the said business and the financial affairs of said company, the defendants Charles R. Mains and Swartwout, without consulting your orator, and without his knowledge and consent, and in violation of the rights and wishes of your orator and the said Aldrich, assumed exclusive possession and control, as against said Aldrich, of the books, correspondence, office, business, and property of the said copartnership. Your orator shows that as a result of such action on the part of said defendants, and because thereof, the said Aldrich withdrew from said copartnership, selling his interest therein to the remaining copartners. Your orator shows that the treatment of the said Aldrich, as aforesaid, was wholly in violation of the desire and purpose of your orator, and that his final withdrawal from said company and the continuation of the business thereafter was only with the forced acquiescence of your orator; that your orator never agreed that the said remaining copartners, the said defendants and your orator, would pay the said Aldrich to exceed the sum of $2,000 for his interest as aforesaid, but,

notwithstanding this fact, the said defendants Charles R. Mains and Swartwout caused to be executed and delivered to the said Aldrich, in payment of his said interest, the promissory notes of the said company in the aggregate sum of $2,150, payable to the order of the said Aldrich, and the same were soon after by him negotiated.

"Your orator further represents that, prior to the withdrawal of Aldrich, Charles R. Mains had frequently represented that the affairs of the company were in a prosperous condition; that he assured complainant that he would keep the finances of the company well in hand, and that in the future the business would pay its own way, and asked complainant to trust him (Charles R. Mains) to keep the company out of debt, assuring complainant that he was no more in favor of the company getting into debt than complainant; that, at such time and afterwards, complainant acquiesced in the continuing of the business, relying upon the representations made as aforesaid; that from June 9, 1894, to April 8, 1896, Charles R. Mains continued in possession and exclusive control and management of the business; that, soon after Charles R. Mains assumed the management of said business, the company became and was hopelessly insolvent, and that, during the nine months immediately following the formation of the copartnership, defendants and Aldrich borrowed at least $7,000, in addition to the $1,500 before referred to, on the credit of the firm; that upon learning of this indebtedness, and then learning for the first time that he might be held personally liable therefor, complainant protested, and was informed by Charles R. Mains that the defendants had deemed it necessary to contract the indebtedness, and that the money realized had been used in the business, but assured complainant that in the future it would be unnecessary to contract any further indebtedness; but that, notwithstanding this assurance, said defendants continued to contract further debts, and, upon the maturity of the debts previously contracted, secured an extension of time, and that still later complainant was obliged to extend his own individual credit by signing paper of said company in order to save the company from financial wreck.

"Your orator further shows that the company became more and more embarrassed, and its liabilities continually increased, and have continuously been far in excess of its

assets; that owing to the unsatisfactory condition of the company, and the aforesaid mismanagement of the same, complainant made various attempts to sever his connection with the same; that he offered to transfer his entire interest to Charles R. Mains upon his (Charles R.'s) promise to pay $700, and agreeing to save complainant harmless as regards debts, and also tried to get defendants to contribute each $1,000 (offering to do the same himself) to increase the capital stock, but defendants declined and circumvented complainant's proposition by all manner of dilatory excuses, plausible pretensions, and fraudulent representations that the said company was in good financial condition, and that it would soon be free from debt.

"Your orator further represents that at various times Charles R. Mains expressed a desire to incorporate the firm, and held out to complainant that, in subscribing to the stock, he (complainant) would incur no personal liability, and that the corporation would assume the payment of the partnership debts, and that, upon the debts being paid, complainant would be free from liability because of his connection with the copartnership; that in the month of August, 1895, complainant expressed a willingness to carry out the proposed arrangement in relation to incorporating the company, but that steps for the incorporation were delayed until February, 1896, when articles were prepared, and finally, on the 8th of April, 1896, complainant and defendants Mains and Swartwout signed the articles of association."

These articles state the amount of capital stock actually paid in at $100,000. The articles were recorded in the offices of the secretary of state and the county clerk of Calhoun county.

The bill further alleges that subsequently, on July 18, 1896, an agreement was executed between the parties (complainant still relying on the representations of Charles R. Mains) by which the copartnership transferred to the corporation all of its property, including patents, and the corporation assumed the payment of all the debts of the copartnership due and owing, or that might become due and owing, to John Mains, and accounts due Charles R. Mains for services, and further providing that any sum that the said John Mains should pay, growing out of

the breach of the undertaking of the corporation to pay debts of the copartnership, should be payable forthwith, and draw interest at 7 per cent. This agreement is signed by the corporation, by "Charles R. Mains, Manager," and by the complainant, and by the individual defendants, comprising the corporation and the copartnership as well.

The bill further alleges that the complainant, relying on the supposed incorporation of the said copartnership, and the binding and legal effect of the agreement last above recited, and supposing that it was sufficient to bind the corporation to pay all the debts of the copartnership, and not simply the debts owing to the complainant, sold and transferred his one-third interest in the stock of the corporation to Charles R. Mains for $700, accepting the note of Charles R. Mains therefor, which note complainant still has, and is willing to return to defendant if the court shall so order or decree. The bill further alleges that, at the time of the incorporation, complainant requested of defendant Charles R. Mains that actual notice be given to persons with whom the copartnership had been dealing of the incorporation, but defendant Charles R. Mains assured him that it would be unnecessary, and that the record of the articles of association would be sufficient; that, however, Charles R. Mains promised to change the letter-heads and other stationery so as to plainly indicate thereon the incorporation of said company, but this, it is charged on information and belief, the defendant Charles R. Mains has persistently and fraudulently neglected to do, and that the defendants have studiously and fraudulently neglected to give any notice of the attempted transfer of stock by the complainant, and that complainant had attempted to sever his connection with the said Homer Steel-Fence Company, but, on the contrary, the said defendants have, by artifice and deceit, expressly and by implication conveyed the impression to creditors and others that complainant was still a member of said firm; that defendant Swartwout has re-

cently stated to complainant that he claims, as matter of law and fact, that said attempted incorporation of said company was a mere nullity, and that complainant and defendants were still liable as copartners for the obligations and contracts since the attempted incorporation.

The bill further alleges that no meeting of the stockholders was ever assembled; that the subscribers to the stock never met and appointed any one to act as the agent or representative of the corporation; that no by-laws were ever adopted; that no seal has been adopted; that no record was ever made of any proceedings of the corporation; that Charles R. Mains still neglects to give actual notice of the attempted incorporation of said company, alleging as an excuse therefor that it might result in said Homer Steel-Fence Company being obliged to pay certain corporation taxes or fees for the privilege of doing business in other States; that, since the attempted incorporation, the business has been done by Charles R. Mains, assuming to act as manager, and that he, as such, signs the name of the Homer Steel-Fence Company to negotiable promissory notes, but without indicating whether such obligations are those of the copartnership or corporation, except by appending in some instances the term "Manager" to his name; that, so far as the complainant has acquiesced or assented to the conduct of said defendants since the incorporation, it has been because of his reliance on the advice, counsel, and representation of the said defendants, and particularly Charles R. Mains, and in further reliance that the transactions relative to such incorporation were legal, and that not until recently did complainant learn that the legality of such transactions was questionable. The bill further alleges the indebtedness of the Homer Steel-Fence Company to complainant and others, aggregating $17,000; alleges that the assets, aside from patents, amount to $12,-820, and that this latter sum includes the accumulated bad debts of the concern; that suit has been brought against the corporation; that on learning of the questionable legality of the attempted incorporation, and of said at-

tempted transfer of stock, complainant applied to Charles R. Mains to be permitted to participate in the prosecution of the business of said company, and that complainant be restored to his rights as copartner, but this was denied; that complainant protested against signing said articles of incorporation, because of the large amount of capital stock designated in said articles as paid-in stock, but was finally induced by said Charles R. Mains to sign the same, he claiming and representing to complainant, and advising him, that he would incur no personal liability, and that the assets of the copartnership to be turned over to the corporation were well worth $100,000.

The prayer of the bill is as follows:

"That an account may be taken of all and every one of the partnership dealings and transactions, from the time of the commencement thereof (up to the time of the formation of said attempted incorporation), and also an account of all the moneys received and paid by your orator and the said defendants, or either of them, respectively, in regard thereto, your orator being ready and willing and hereby offering to so account; and that the said partnership may be dissolved, and its affairs wound up, and its assets devoted first to the payment of its creditors, and balance remaining distributed among the several partners, as their interests may appear; and if it shall appear to the court that a corporation was legally organized, by virtue of the acts and proceedings hereinbefore set forth, then that the said corporation be dissolved by reason of its insolvency and fraudulent inception and practices, as hereinbefore set forth, and its assets and business and affairs committed to a receiver, to carry on the business thereof, for the purpose of winding up its affairs, and paying the indebtedness of said partnership under the agreement hereinbefore set forth, and its own indebtedness; and that, in case it shall appear to the court that no corporation *de facto* or otherwise exists, then that there be a partnership accounting of the entire business of said partnership, as hereinbefore prayed; and that in the meantime the said defendants may be restrained, by the order and injunction of this honorable court, from collecting or receiving any partnership debts or other moneys; and that some proper person may be appointed to collect and receive the same."

This is followed by a prayer for injunction restraining defendants from receiving any moneys due, or from selling any property except in the usual course of trade, and by prayer for subpœna.   The bill also contains a prayer for general relief.

It will be seen from this extended synopsis of the bill that complainant's equities, if he has any, grow out of transactions arising after the attempted incorporation, or out of alleged imperfections in the incorporation, or fraud practiced upon him in connection with the incorporation. The previous history of the copartnership dealings is unimportant, except as that history bears upon these questions, as it is not alleged that the complainant was uninformed as to the condition of the company and its indebtedness when the articles of incorporation were signed by him.

The following is the plea of the defendant corporation:

"The plea of the Homer Steel-Fence Company, a corporation, to the bill of complaint of John Mains, complainant: This defendant, by protestation, not confessing or acknowledging any or all of the matters or things in the complainant's said bill mentioned to be true in such manner and form as the same are therein and thereby set forth and alleged, doth plead thereunto, and for plea says: That by the transfer of the interest of the partners and the copartnership heretofore existing between said John Mains, Charles R. Mains, and Horace V. Swartwout, the said Homer Steel-Fence Company, as a copartnership, the Homer Steel-Fence Company, as such corporation, became possessed of, and is now the owner of, and by virtue of the said transaction claims all the right, title, and interest in, any and all of the property theretofore owned by said copartnership; and included in said assets so transferred to it (said corporation) by said copartnership are certain lands and real estate lying in the city of Battle Creek, county of Calhoun, State of Michigan, and the tenements and hereditaments situated thereon, including factory building, which land is described as follows, to wit: 'City lots 171, 172, 173, and the east half of lot 174, of A. C. Hamlin's addition to the city of Battle Creek, as appears by the plat of said addition, recorded in the office of register of deeds of the county of Calhoun,'—which

said land, with the buildings thereon, is of great value, to wit, valued at $2,500, and of which land the said Homer Steel-Fence Company, a corporation, would be the legal and equitable owner; and this defendant pleads in bar of this, to wit, that owing to the fact that the title and ownership of said land is involved, and in the determination of this case would be disposed of, and it would not be possible to dispose of the case on any theory of it without disposing of the right, title, and ownership of said land as between said copartners and said corporation, or by the disposing of the land in the winding up of the affairs of this corporation, and because thereof, defendant alleges, in bar of this suit, that, for said reason, this court has not, and under the law of this State cannot acquire any, jurisdiction to dispose of and determine this case and the issues involved in it; that, the issues involving the title of said land, and to dispose of it, being local, the said Battle Creek being the home office of said corporation, and it being a resident of said city, under the law of this State, the circuit court for the county of Calhoun, in chancery, is the only court possessed of and entitled to entertain jurisdiction of the subject-matter of this suit. The transfer of said property (land) to this defendant having been made in good faith and for a valuable consideration, and without any fraud, concealment, or deception, the title to said land is legally and equitably vested in this defendant; and defendant denies in this connection any and all charges of wrongdoing, fraud, misrepresentation, or other wrong alleged in complainant's bill, which could or might entitle him in a proper court to equitable relief and consideration.

"And for answer to the remainder of complainant's said bill, this defendant says that, in justice and equity, the complainant is not entitled to any relief, and hereby expressly denies each and every one of the material allegations of complainant's bill that would in any manner entitle him to equitable relief, or the right to maintain this case; and the defendant alleges that the charge of insolvency is absolutely untrue and false, as this defendant can maintain and prove; and said bill should be dismissed, and this defendant discharged, with its reasonable costs in and about the defense of this suit sustained. Therefore this defendant doth plead the same in bar to the entire action of the complainant, and to the entire relief prayed in the complainant's bill, and prays the judgment of this honor-

able court whether it should be compelled to make any further answer to the whole or any part of said bill, and prays to be hence dismissed, with its costs and charges in this behalf most wrongfully sustained."

The plea of defendants Mains and Swartwout is as follows:

"The plea of Charles R. Mains and Horace V. Swartwout to the bill of complaint of John Mains, complainant: These defendants, by protestation, not confessing or acknowledging the matters or things in and by said bill set forth and alleged to be true in such manner and form as the same are thereby and therein set forth and alleged, for plea to the whole of said bill, say: That for a valuable consideration to these defendants and said complainant, John Mains, duly paid by the Homer Steel-Fence Company, a corporation, these defendants and the said John Mains, then and there composing the Homer Steel-Fence Company, a copartnership, then and there, and for said consideration, as aforesaid, by an agreement dated on the 1st day of May, 1896, freely and in good faith executed and delivered to the said corporation, said Homer Steel-Fence Company, the contract and agreement set out in complainant's bill of complaint, and thereby, and for such consideration, then and there transferred all right, title, and interest of these defendants and said complainant, comprising the said Homer Steel-Fence Company, a copartnership, to the said Homer Steel-Fence Company, a corporation, and the said complainant and defendants then and thereby transferred any and all interest of every name and nature in and to all the property, real, personal, and mixed, of said copartnership, and thereby divested themselves of all title thereto; and because thereof said Homer Steel-Fence Company, a corporation, became and then was invested with all of the right, title, and interest thereto, and these defendants and complainant, as said copartners, lost all right and authority over and to the title and possession of said property, and complainant and each of these defendants thereby lost and parted with all right to demand of or from any person possession or an accounting for said property, or any part of it, the amount or extent thereof, and the right to demand an accounting in relation to said property thereby became invested in the Homer Steel-Fence Company as a corporation, and any and all other persons thereby were divested of said right.

"Defendants say and allege that said transfer was made in good faith, without any fraud or concealment, for a valuable consideration, and for the mutual benefit and best interest of all concerned therewith; and because of such transaction, the good faith and valuable consideration upon which it is based, the said complainant, these defendants, and every one connected therewith, is denied the right to, and should be estopped from, setting up any right, title, or interest in any of said property as against the Homer Steel-Fence Company, a corporation, and should be estopped from denying the legal existence of said corporation; at the date of such transfer, these defendants and complainant knowing each and every one of the facts as they existed then, and are existing now.

"In answering said bill, these defendants expressly deny each and every one of the allegations of fraud, misrepresentation, and other wrong charged in complainant's bill of complaint, and every allegation that would in any manner, under any circumstance, and any theory in this case, entitle the complainant to relief, equitable or otherwise, in this court.

"And defendants allege that complainant has parted with all his title, right, and interest that would have enabled him otherwise to have maintained this suit for a partnership accounting, and that these defendants, as individuals, are not interested in any other matter in litigation in this suit; they being improperly joined as defendants if complainant claims to have filed this bill as a creditor, under the statute, asking for the winding up of the affairs of said corporation; they, as individuals, not being interested as individuals, could not legally be joined.

"And, further answering, these defendants allege that said corporation claims to be the legal and equitable owner, and is the legal and equitable owner, of all of the copartnership assets owned by said copartners before the making of said agreement before mentioned, and that a part of said assets consists of land described as lying and being in the city of Battle Creek, county of Calhoun, State of Michigan, and specifically described as lots 171, 172, 173, and the east half of lot 174, according to the plat of A. C. Hamlin's addition to the city of Battle Creek, of great value, to wit, the value of $2,500, and that the home office of said corporation is at the city of Battle Creek, aforesaid, and that it is a resident of said city; and

these defendants, in answer, allege that the circuit court of the county of Calhoun, in chancery, is the proper court and has jurisdiction to settle and dispose of the matters and controversy in complainant's bill mentioned, and that this court has no jurisdiction. Therefore these defendants do plead the same in bar to so much of said complainant's bill as is hereinbefore in particular mentioned, and pray the judgment of this honorable court whether they should be compelled to make any further answer to said bill as is hereinbefore pleaded to, and pray to be hence dismissed, with their costs and charges in this behalf most wrongfully sustained."

Are these pleas double? The rule is well settled, that a plea to a bill in equity must reduce the cause to a single point. 6 Am. & Eng. Enc. Law, 791; Story, Eq. Pl. § 652; *Albany City Bank* v. *Dorr*, Walk. Ch. 317. This is properly done by averring facts not appearing on the face of the bill, or by denying specifically facts stated in the bill,—that is, stating that a certain fact is not as stated in the bill,—when the effect of such denial is to reduce the case to a single point in bar. *Farley* v *Kittson*, 120 U. S. 303. If this be attempted, the defendant is required to deny the specific facts alleged in the bill, and may not content himself by a general denial of particular averments. *Goodrich* v. *Pendleton*, 3 Johns. Ch. 384. Nor are objections to the equity of complainant's claim as stated by the bill to be taken by plea. This must be done by demurrer. *Farley* v. *Kittson*, *supra*. If this bill be taken as true, complainant occupies the position of creditor of the corporation, and, as such, is entitled to take proceedings, under sections 8150 and 8152, 2 How. Stat.

This bill asks for a receiver, and also an injunction. The plea of the corporation seeks to raise two questions: (1) The question of jurisdiction, resting on two grounds, and (2) the question of insolvency of the corporation,—and also contains a general denial of complainant's averments. The plea of the other defendants sets up estoppel, the question of jurisdiction, and also certain sweeping

denials of complainant's averments.    The pleas are each double, and should be overruled.

The case may be remanded to the circuit for further proceedings.

The other Justices concurred.